UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:15-CR-00354 SNLJ |
| STEVEN BLAKENEY, | ) | |
| Defendant. | ) | |

## GOVERNMENT'S TRIAL BRIEF WITH MOTIONS IN LIMINE

COMES NOW the United States of America, by Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Reginald L. Harris and Jennifer A. Winfield, Assistant United States Attorneys for said District, and submits the following trial brief and motions in limine in connection with the trial of the above-styled matter.

## INTRODUCTION & BACKGROUND

This brief is intended as a general guide for the Court. It is not intended as a comprehensive statement of the Government's case, nor is it intended to be in the nature of a bill of particulars that would fix, bind, or in any way limit the Government to a set theory of proof.

I. SUMMARY OF PROCEEDINGS TO DATE

On July 29, 2015, a Federal Grand Jury sitting in the Eastern District of Missouri returned an indictment charging Steven Blakeney with one count of Conspiracy Against Rights in violation of Title 18, United States Code, Section 241, one count of Deprivation of Rights Under Color of Law in violation of Title 18, United States Code, Section 242, and one count of Falsifying a Document in violation of Title 18, United States Code, Section 1519. The defendant

was arraigned on the indictment on August 7, 2015. The defendant has filed no pre-trial motions attacking the indictment or seeking to suppress any evidence. Following two continuances, this case is scheduled for trial on Monday, January 25, 2016.

II.     FACTUAL BACKGROUND

To aid the Court in understanding this matter, in the paragraphs that follow, the Government attempts to summarize some, but not all, of the evidence it expects to present at trial.

Defendant Steven Blakeney is charged with conspiring to violate the civil rights of N.F. and depriving N.F. of her right not to be subjected to unreasonable seizure by a law enforcement officer in connection with the arrest on March 31, 2013 of N.F. in Pine Lawn, Missouri. The defendant is also charged with falsifying the police report related to that arrest.

At the time of the arrest of N.F., the defendant was a Lieutenant with the City of Pine Lawn, Missouri Police Department. N.F. was a candidate for the office of Mayor of Pine Lawn and was an opponent of the incumbent, Sylvester Caldwell, whom the defendant supported. The mayoral election was scheduled for April 2, 2013.

On March 31, 2013, N.F. entered the Pine Lawn Market, which was a local grocery store. N.F. noticed a campaign poster hanging on the door of the market. The poster appeared to have been created by the Caldwell campaign and depicted N.F. in a negative light. N.F. spoke with the store owner and asked him if she could remove the poster. The owner gave her permission to remove the poster, which she did. Shortly thereafter, N.F. left the store.

Later that day, the defendant and other Pine Lawn police officers arrived at the store. The defendant noticed that the poster was gone and confronted the store owner about the missing poster, accusing him of removing it. The owner told the defendant that N.F. removed the poster.

2

The defendant insisted on seeing the security camera footage showing N.F. removing the poster. The owner agreed to allow the defendant to see the video footage but only if the defendant sent the rest of the officers away, which the defendant did.

While still at the store, the defendant contacted A.S., the store manager and brother of the owner, and directed A.S. to come to the store. After A.S. arrived, the defendant told him to call the police and report that N.F. had stolen the poster, well knowing that no actual theft had occurred. To conceal his own involvement in the scheme, the defendant directed A.S. not to place the call until after the defendant left the store. Reluctantly, A.S. complied. He called the police and falsely reported that N.F. had stolen property from the store.

The defendant and other police officers responded to the store to "investigate." The defendant also summoned the Pine Lawn City Prosecutor to the scene to review the video and to speak with A.S. A.S. told the prosecutor that N.F. did not have permission to remove the sign.

The defendant directed the owner and A.S. to give interviews at the police station and to provide written statements. Because of A.S.'s difficulty writing in English, his son wrote his statement for him. The defendant told A.S.'s son what to include in the written statement. The written statement falsely alleged that A.S. had previously obtained the campaign poster from Caldwell while at the Pine Lawn City Hall so that A.S. could hang the poster in the store himself. The defendant knew that these allegations were false. Based on the false allegations, a wanted was issued for N.F.'s arrest on charges of theft and disorderly conduct.

Later that night, the defendant, the Chief of the Pine Lawn Police Department, other officers, and the prosecutor went to N.F.'s residence to arrest her. The police placed N.F. under arrest and transported her to the Pine Lawn police station. The defendant alerted a local television news outlet which was waiting at the police station and covered the arrest. N.F.

remained in police custody until the early morning hours of April 1.

The defendant assigned Police Officer Jesse Brock, who never interviewed A.S., to write the police report for the case. The defendant told Brock what to include in the police report regarding A.S.'s statement to police, including the false allegations.

## LEGAL MATTERS

In the following sections, the Government summarizes certain legal matters that may arise prior to or during the trial of this case. The Government addresses these matters now, in order to assist the Court and to identify possible issues to defense counsel prior to trial so that counsel may respond and the Court may rule. The Government does not, however, attempt to address every legal matter that may arise.

I. ELEMENTS OF THE OFFENSES

**A. Conspiracy Against Rights**

In Count 1, the defendant is charged with violating 18 U.S.C. § 241, which makes it a crime "[i]f two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States . . . ." 18 U.S.C. § 241. To prove a violation of section 241, the Government must establish that (1) two or more persons entered into an agreement, (2) the purpose of which was to injure, oppress, threaten, or intimidate another person (3) in the free exercise or enjoyment of any right or privilege secured by the Constitution or federal law. Id.; United States v. Redwine, 715 F.2d 315, 319 (7th Cir. 1983). The Government is not required to prove an overt act in furtherance of the conspiracy. United States v. Crochiere, 129 F.3d 233, 237 (1st Cir. 1997).

**B. Deprivation of Rights**

In Count 2, the defendant is charged with violating 18 U.S.C. § 242, which subjects to criminal punishment anyone who, "under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . ." 18 U.S.C. § 242. To prove a violation of section 242, the Government must establish that the defendant (1) willfully and (2) under color of law (3) subjected another person to the deprivation of any right secured or protected by the Constitution or federal law. Id.; United States v. Lanier, 520 U.S. 259, 264 (1997); United States v. Fleming, 526 F.2d 191, 192 (8th Cir. 1975).

*1. Willfulness*

A "willful" act is one committed either "in open defiance or in reckless disregard of a constitutional requirement which has been made specific and definite." Screws v. United States, 325 U.S. 91, 105 (1945); see also U.S. v. Reese, 2 F.3d 870, 881 (9th Cir. 1993) (intentionally wrongful conduct that "contravenes a right definitely established in law, evidences a reckless disregard for that right[, which], in turn, is the legal equivalent of willfulness."); see also United States v. Johnstone, 107 F.3d 200, 208 (3d Cir 1997) ("[W]illfulness includes reckless disregard."). Although the Government must establish that the defendant acted with the specific intent to deprive a person of a federal right, it need not prove that the defendant was thinking in constitutional terms. Screws, 325 U.S. at 106 ("The fact that the defendants may not have been thinking in constitutional terms is not material where their aim was not to enforce local law but to deprive a citizen of a right and that right was protected by the Constitution."). Rather, the willfulness element of 18 U.S.C. § 242 simply requires that the defendant know his actions are

wrong and against the law but that he choose to act anyway.

        *2. Color of Law*

Under § 242, a defendant acts under color of law when he is an official or employee of a federal, state, or local government and uses or abuses the power he possesses by virtue of law—even if his actions violate state law or exceed his lawful authority. West v. Atkins, 487 U.S. 42 (1988); Griffin v. Maryland, 378 U.S. 130, 135 (1964); Williams v. United States, 341 U.S. 97, 99-100 (1951); United States v. Classic, 313 U.S. 299, 326 (1941).

        *3. Deprivation of a Protected Right*

The Fourth Amendment of the United States Constitution protects arrestees like N.F. from unreasonable seizure. "When an officer, knowing a warrant to be illegal, groundless, or fictitious, willfully uses his authority, and/or such an instrument to arrest and incarcerate the accused, such action is a deprivation of the right of the accused to liberty and a violation of 18 U.S.C. § 242. Neither threat nor violence is a necessary ingredient of the offense under such circumstances." United States v. Ramey, 336 F.2d 1512, 1514 (4th Cir. 1964).

    **C. Falsifying A Document**

In Count 3, the defendant is charged with violating 18 U.S.C. § 1519, which subjects to criminal punishment anyone who "knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . or in relation to or contemplation of any such matter or case . . . ." 18 U.S.C. § 1519.

To prove a violation of section 1519, the Government must establish that the defendant (1) knowingly falsified a document (2) with the intent to impede, obstruct, or influence the

investigation or proper administration (3) of a matter within the jurisdiction of a department or agency of the United States. 8th Cir. Manual of Model Jury Instructions § 6.18.1519 (2014). "[Section] 1519 does not require the existence or likelihood of a federal investigation." United States v. Gray, 642 F.3d 371, 379 (2nd Cir. 2011). According to the 8th Circuit pattern instruction, "[t]here is no requirement that the matter have been pending at the time of the obstruction, but only that the acts were taken in relation to or in contemplation of any such matter." See also United States v. Yielding, 657 F.3d 688, 711 (8th Cir. 2011) (noting that Congress intended to extend the statute "to situations in which the accused . . . acts . . . in contemplation of a future matter").

II.  RECORDINGS & TRANSCRIPTS

The Government may introduce at trial recordings of police dispatch communications and interviews of two witnesses.

### A.  Excerpt Recordings

The audibility of the recordings is generally quite good, but they are lengthy. Therefore, the Government does not intend to play the entire recordings. Instead, excerpts of the recordings will be offered; such excerpts and summary testimony about the same are appropriate. Fed. R. Evid. 1006; United States v. Segines, 17 F.3d 847 (6th Cir. 1994); United States v. Denton, 556 F.2d 811, 815-16 (6th Cir. 1977) and cases cited therein.

### B.  Authenticity of Recordings

Based on discussions with defense counsel, it is anticipated that the authenticity of the recordings will be stipulated by the parties. If not, the Government will authenticate the recordings through the testimony of a participant in the conversations or through the testimony of a witness familiar with the participants in the conversations. The Government may also have a

FBI agent testify as to the authenticity of the recordings. This is a proper procedure. See United States v. Calderin-Rodriguez, 244 F.3d 977, 986-87 (8th Cir. 2001) (consensual recording can be authenticated even when it is introduced by an agent who was not a participant to the conversation). United States v. McMillan, 508 F.2d 101, 104 (8th Cir. 1974), cert. denied, 421 U.S. 916 (1975) and its progeny set forth a prima facie test to establish the authenticity of electronic surveillance. See United States v. Henley, 766 F.3d 893, 912-13 (8th Cir. 2014) (analyzing McMillan factors). The elements of this test are not rigid, but are applied with flexibility and common sense. Id.; United States v. Webster, 84 F.3d 1056, 1064 (8th Cir. 1996); United States v. Roach, 28 F.3d 729, 733 (8th Cir. 1994).

### C. Use of Transcripts

The Government plans to introduce transcripts of all of the conversations played. In the Eighth Circuit, the decision to allow the use of transcripts to assist jurors in listening to a recording lies within the sound discretion of the district judge. United States v. Chavez-Alvarez, 594 F.3d 1062, 1069 (8th Cir. 2010); see also United States v. Placensia, 352 F.3d 1157, 1165 (8th Cir. 2003) (noting trial court's discretion to admit transcripts of foreign language transcripts even without tape recordings). Transcripts in the jury room will generally not be considered cumulative when they assist the jury in evaluating the evidence. Chavez-Alvarez, 594 F.3d at 1069.

The use of transcripts aids the jury in a number of ways. Among these are: (1) to help the jurors follow often poor-quality recordings -- United States v. Riascos, 944 F.2d 442, 443 (8th Cir. 1991); (2) to identify speakers -- United States v. Henneberry, 719 F.2d 941, 949 (8th Cir. 1983), cert. denied sub nom. Youngerman v. United States, 465 U.S. 1107 (1984); (3) to assist the jury when portions of the recording are inaudible -- United States v. Willis, 774 F.2d 258,

259 (8th Cir. 1985); and (4) to aid the jury in understanding colloquialisms in the conversation -- United States v. Delpit, 94 F.3d 1134, 1148 (8th Cir. 1996).

The trial court should allow the use of transcripts only after each party has had an opportunity to verify the accuracy of the recordings and provide their own transcript. United States v. Britton, 68 F.3d 262, 264 (8th Cir. 1995). Foundationally, the person who prepared the transcripts should testify that he has listened to the recordings and accurately transcribed their contents. United States v. Bentley, 706 F.2d 1498, 1507 (8th Cir. 1983); United States v. Frazier, 280 F.3d 835, 849 (8th Cir. 2002). However, the Eighth Circuit does not mandate that the foundation for the transcripts be laid by one who prepared the transcripts, but it may be established by one who was a party to the conversations. United States v. Gordon, 688 F.2d 42, 44 (8th Cir. 1982); Frazier, 280 F.3d at 849-50.

The Court, of course, must instruct the jury that differences in meaning may be caused by such factors as the inflection in a speaker's voice or inaccuracies in the transcript and that "any discrepancies [from the transcript] should be resolved in favor of what they heard on the tapes." United States v. Scott, 243 F.3d 1103, 1107 (8th Cir. 2001). However, once admitted into evidence and given the proper cautionary instruction, the transcripts may be used by the jury in their deliberations. United States v. Foster, 815 F.2d 1200, 1203 (8th Cir. 1987); Chavez-Alvarez, 594 F.3d at 1069.

## MOTIONS IN LIMINE

I. EVIDENCE OF DEFENDANT'S GOOD CONDUCT

The United States moves this Court to exclude from trial evidence of, or reference to, any specific instances of the defendant's good conduct, including but not limited to, evidence of any

awards, commendations, or recognition he may have received during his career in law enforcement. Such evidence would constitute improper character evidence under Federal Rules of Evidence 404(a)(1) and 405(a) and therefore should be excluded.

Evidence of specific instances of good conduct by the defendant, or of awards, commendations, or other recognition he received, is inadmissible under Federal Rule of Evidence 404(a)(1), because the evidence does not relate to a character trait that is "pertinent," or relevant to, the criminal charges in this case. Second, even if the evidence related to a pertinent trait, evidence of the defendant's specific acts of good conduct would still be inadmissible under Rule 405(a), which governs the form of character evidence, and allows evidence only as to the reputation of the defendant or as to a witness's opinion of the defendant's pertinent character trait. The Rule prohibits the introduction of evidence relating to specific instances of conduct reflecting the character trait.

  A. *Evidence of Specific Instances of Good Conduct by the Defendant Constitutes Inadmissible Character Evidence.*

Rule 404(a) of the Federal Rules of Evidence generally prohibits the introduction of evidence of a person's character to prove that the person acted in conformity therewith on a particular occasion. The Rule's general prohibition against character evidence contains three exceptions, one of which governs the admissibility of character evidence relating to the accused.[1] See Fed.R.Evid. 404(a)(1). The exception concerning the character of the accused specifies that such evidence is admissible only if it relates to a "pertinent," or relevant, character trait. See Fed.R.Evid. 404(a)(1). In United States v. Neighbors, 23 F.3d 306, 310 (10th Cir. 1994), the Tenth Circuit held that the trial court properly excluded a defendant's good character evidence

---

[1] Rule 404(a)(2) contains an exception for character evidence concerning the victim; Rule 404(a)(3) contains an exception for character evidence concerning a witness.

because evidence that the defendant was asked to serve on the board of a substance abuse center because of his strong advocacy against drug abuse was not material to whether the defendant, a pharmacist, had violated federal drug statutes by over-ordering several kinds of drugs on behalf of the pharmacy where he worked and converting them to his own use. See also United States v. Washington, 106 F.3d 983, 999-1000 (D.C. Cir. 1997) (holding that a police officer's commendations were not admissible because the defendant's "dedication, aggressiveness and assertiveness" in investigating drug dealing and carjacking was neither "pertinent" to, nor an "essential element" of, bribery, conspiracy, or drug and firearms charges with which he was charged); United States v. Nazzaro, 889 F.2d 1158, 1168 (1st Cir. 1990) (holding that the trial court properly excluded evidence of a police officer's prior commendations because "the traits which they purport to show—bravery, attention to duty, perhaps community spirit—were hardly 'pertinent' to the crimes [of perjury and conspiracy to commit mail fraud] of which [the defendant] stood accused").

In this case, character evidence offered to prove the general good character of the defendant—such as effectiveness, attention to duty, commitment to public service, kindness, professionalism, or dedication—is not admissible because it is not pertinent to the civil rights charges brought against the defendant. Although a defendant's character for law-abidingness is always "pertinent," United States v. Yarborough, 527 F.3d 1092, 1102 (10th Cir. 2008), evidence of the defendant's successful performance of his duties as a law enforcement officer or evidence of specific acts of helpfulness to the community does not constitute evidence of his law-abiding character. Thus, evidence of the defendant's specific good acts, commendations, and awards is irrelevant and should be excluded as impermissible character evidence.

11

B.     Any Admissible Character Evidence Must be Limited in Form to Testimony as to the Witness's Opinion of the Defendant or the Defendant's Reputation.

Even if evidence of the defendant's prior good acts were indicative of a pertinent character trait or of general law-abidingness, the form of that evidence would be governed by Federal Rule of Evidence 405(a), which limits such evidence to "testimony as to reputation or by testimony in the form of an opinion." Fed.R.Evid. 405(a). Proof of specific instances of conduct is not permitted under the Rule. See United States v. John, 309 F.3d 298, 303 (5th Cir. 2002); United States v. Marrero, 904 F.2d 251, 260 (5th Cir. 1990) (finding that trial court properly excluded defendant's proffer of specific instances of good character).[2] See also United States v. Ellisor, 522 F.3d 1255, 1270-71 (11th Cir. 2008); United States v. Benedetto, 571 F.2d 1246, 1250 (2d Cir. 1978) (finding that trial court should not have permitted defense witness to establish defendant's good character by referring to specific good acts).

Thus, even if the defendant established a basis for the relevance of evidence of good character, the defendant would still be limited to proving such good character in the form of testimony as to the defendant's reputation or an opinion about the defendant's relevant character trait. For example, a witness could testify that he is familiar with the defendant's reputation and that the defendant has a reputation for being a law-abiding citizen. The defendant would not be permitted, however, to introduce evidence of, or refer to, any specific instances of good conduct engaged in by the defendant, or to introduce evidence of, or refer to, his good work performance

---

[2] Rule 405(b) permits specific instances of conduct to prove character only in cases in which the character trait at issue is "an essential element of a charge, claim, or defense." For example, in a defamation or libel case, damage to the reputation of the complainant is an essential element of the charge. See Schafer v. Time, Inc., 142 F.3d 1361, 1371-72 (11th Cir. 1998). In this case, the defendant's character is not an essential element of any charge or defense.

12

or achievements in general. Even in the limited circumstances in which character evidence concerning the defendant is admissible, circumstantial evidence that the defendant acted in conformity with a relevant character trait may not be proved by specific instances of good conduct.[3]

II.   REFERENCE TO GOVERNMENT'S FAILURE TO CALL EQUALLY AVAILABLE WITNESSES

The United States moves this Court to enter an order prohibiting the defendant from making reference to, or arguments about, the government's failure to call any witness that was equally available to both parties. A party may comment on the other party's failure to call a witness only if the witness was peculiarly available to the other side. "Where witnesses are equally available to either party, no adverse inference may be drawn from the failure of one party to call them." Illinois Cent R. Co. v. Staples, 272 F.2d 829, 834 (8th Cir. 1959). See also General Dynamics Corp. v. Selb Mfg Co., 481 F.2d 1204, 1217 (8th Cir. 1983); United States v. Caccia, 122 F.3d 136, 138 (2d Cir. 1997) (holding that unavailability of the witness to one side is a "requirement" before a missing witness instruction may be issued); United States v. Montoya, 676 F.2d. 428, 431 (10th Cir. 1982) (jury instruction regarding missing witnesses "is not warranted unless it is solely within the prosecution's power to call the witness to testify.").

In Walker v. United States, 489 F. 2d 714 (8th Cir. 1974), the Eighth Circuit addressed the trial court's failure to give an instruction about the prosecution's failure to produce a witness.

---

[3] If the defendant's witnesses are permitted to offer character evidence in the form of reputation and opinion testimony regarding the good character of the defendant, the government is permitted under Rule 405(a) to inquire of the witnesses on cross-examination about their knowledge of specific acts of misconduct by the defendant. See United States v. McHorse, 179 F.2d 889, 901-02 (10th Cir. 1999).

Affirming the trial court's decision not to give such an instruction, the Court held, "[Walker] made no adequate showing that the government at the time of trial possessed the sole power to produce [the person at issue] as a witness. Moreover, [Walker] did not request that the government make [this person] available as a witness, either at the time of trial or earlier." Id. at 716. Furthermore, the Court cited E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 11.33 (1970), which states, "If it is peculiarly within the power of either the prosecution or the defense to produce a witness who could give material testimony on an issue in the case, failure to call that witness may give rise to an inference that his testimony would be unfavorable to that party. However, no such conclusion should be drawn by [the jury] with regard to a witness who is equally available to both parties, or where the witness's testimony would be merely cumulative. The jury will always bear in mind that the law never imposes on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence." Id at n. 1.

Because none of the government witnesses is uniquely available to the United States, commenting on the failure of the prosecution to call any one of a number of witnesses would be improper on the part of the defendant and should not be permitted.

III. PHOTOGRAPHS OF GOVERNMENT WITNESS

The Government anticipates that the defendant will attempt to introduce into evidence photographs that purport to depict one of the Government's witnesses holding various firearms. The Government requests that the defendant be precluded from introducing these photographs because they are irrelevant and because they would tend to confuse the jury and unduly prejudice the Government.

*A.     The Evidence is Irrelevant.*

Photographs of a Government witness holding firearms are inadmissible at trial because they are irrelevant. Rule 402 of the Federal Rules of Evidence states, "Evidence which is not relevant is not admissible." Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. A two-step process is used to determine whether evidence is relevant: (1) Does the evidence make the existence of some fact more probable or less probable? (2) Is the fact to which the evidence is directed a fact "of consequence to the determination of the action"? United States v. Waltrip, 981 F.2d 799, 806-07 (5th Cir. 1993); United States v. Diaz, 878 F.2d 608, 614-15 (2nd Cir. 1989).

Evidence of a witness holding a firearm simply has no relevance to the matters at issue in this criminal trial. The defendant is charged with violating the civil rights of an individual (not the witness purportedly depicted in the photographs) and falsifying a police report. Whether one of the witnesses possessed a firearm on a certain day has no relevance to the charges in this case.

*B.     The Evidence is not Proper Impeachment Evidence under Rule 608(b).*

Under Rule 608(b) of the Federal Rules of Evidence, a court may permit inquiry into specific instances of the conduct of a witness on cross-examination if those instances are probative of the witness's character for truthfulness or untruthfulness. Fed. R. Evid. 608(b). The instances here, however, are not probative of the truthfulness or untruthfulness of the witness. Instead, the instances merely suggest that the witness on one or more occasions possessed firearms. There is no indication that these alleged instances of firearm possession were even unlawful, let alone probative of untruthfulness. However, allowing the defense to inquiry into the witness's prior possession of firearms does have the potential to inflame the passions of the

15

jury and to unduly prejudice the Government by causing the jury to discredit the Government's witness on an improper basis. See Fed. R. Evid. 403. Accordingly, the Government requests that such evidence be excluded from the trial of this case and that the defense not be allowed to cross-examine the witness regarding his alleged prior possession of firearms.

IV.    SELECTIVE PROSECUTION

The United States moves this Court to enter an order prohibiting the defendant from suggesting or arguing in any form during the trial of this case that the defendant is being targeted for selective prosecution. It is well settled that a defendant may not argue selective prosecution as a defense to the merits of a criminal charge. "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." United States v. Armstrong, 517 U.S. 456, 463 (1996). Selective prosecution is therefore an issue for the court to decide by pretrial motion, not an issue for the jury. United States v. Clay, 618 F.3d 946, 955-56 (8th Cir. 2010); United States v. Jones, 52 F.3d 924, 927 (11th Cir. 1995).

For that reason, courts have excluded evidence and argument by defendants seeking to attack the prosecution's motive in initiating a criminal case. In Clay, 618 F.3d at 955-56, the Eighth Circuit upheld the district court's decision not to allow the defendant to present evidence to the jury of the prosecutor's alleged animosity towards the defendant. In United States v. Abboud, 438 F.3d 554, 562, 579-80 (6th Cir. 2006), the Sixth Circuit held that the district court properly precluded the defendants from alleging at trial that "they were targeted because of their Arab descent in the post-September 11 landscape." Also, in United States v. Simpson, 226 Fed.Appx. 556, 562-63 (6th Cir. 2007), the Sixth Circuit agreed that the district court had correctly barred the defendants from questioning witnesses or making arguments based on a

vindictive prosecution theory. Other courts have reached similar conclusions. See, e.g., United States v. Bryant, 5 F.3d 474, 476 (10th Cir. 1993) (upholding district court's restricting of cross examination of witness as to basis of federal rather than state prosecution); United States v. Berrigan, 482 F.2d 171, 175, 177 (3rd Cir. 1973).

The Court should strictly limit any similar improper argument here. Such arguments and statements would be inflammatory, highly improper, and designed only to present the jury with a claim of selective prosecution. This Court should therefore prohibit them in their entirety and should caution defense counsel against making such arguments at any point during the trial – including during opening statements or closing arguments.

V.     JURY NULLIFICATION

The Government similarly requests that the Court preclude any attempts by the defense to encourage jury nullification. Although a jury has the power to engage in jury nullification, "this power of the jury is not a right of the defendants," and "it is not to be positively sanctioned by instructions [or arguments] . . . which would encourage a jury to acquit . . . regardless of the applicable law or proven facts." United States v. Sloan, 704 F. Supp. 880, 884 (N.D. Ind. 1989) (granting the government's motion *in limine* regarding jury nullification arguments) (citation and internal quotation marks omitted). Thus, just as courts should not instruct the jury that they may acquit a defendant even if he or she is guilty, United States v. Drefke, 707 F.2d 978, 982 (8th Cir. 1983); United States v. Avery, 717 F.2d 1020, 1027 (6th Cir. 1983), courts may prohibit the defense from arguing that the jury may engage in nullification. United States v. Brown, 548 F.2d 204, 210 (7th Cir. 1977); see also United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993) ("[A] trial judge . . . may block defense attorneys' attempts to serenade a jury with the siren song of nullification."). This Court should do likewise and preclude the defendant from eliciting

testimony or presenting arguments that encourage jury nullification.

VI. REFERENCES TO PENALTIES FACED BY DEFENDANT

The Government moves this Court to exclude any evidence or argument related to the potential penalties faced by the defendant if convicted.

The Eighth Circuit unequivocally has held that "[t]he penalty to be imposed upon a convicted defendant is generally not a matter for the jury." United States v. Briscoe, 574 F.2d 406, 408 (8th Cir.), cert. denied 439 U.S. 858 (1978). The role of the jury is to decide guilt or innocence, not to determine punishment. See Shannon v. United States, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'") (quoting United States v. Rogers, 422 U.S. 35, 40 (1975)); United States v. Goodface, 835 F.2d 1233, 1237 (8th Cir. 1987) ("the jury's duty is to determine the guilt or innocence of the accused solely based on the evidence adduced at trial"). Thus, "sentencing procedures or details regarding a defendant's possible punishment are irrelevant to the issues that a federal jury must decide. To inform a federal jury about a defendant's punishment would only introduce improper and confusing considerations before it." United States v. Thomas, 895 F.2d 1198, 1200 (8th Cir. 1990). Mention of the potential penalties faced by the defendant would serve only the improper purpose of jury nullification. See, e.g., United States v. Reagan, 694 F.2d 1075, 1080 (7th Cir. 1982) ("'The authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial.'") (quoting United States v. Greer, 620 F.2d 1383, 1384 (10th Cir. 1980)); United States v. Patterson, 1996 WL 54237, at *1 (N.D. Ill. Feb. 8, 1996) (prohibiting discussion of potential penalties in order to avoid possible jury nullification).

Proscribed mention of penalties should include not only specific references to years in jail, but also more veiled themes in potential defense arguments, such as arguments to the effect that the defendant is "on trial for his life," that the defendant's "freedom" hangs on the outcome of the jury's decision, and that the defendant should not be separated from his family. Each of these arguments invites the jury to consider the penal consequences of a conviction on a defendant and, therefore, is wholly improper.

Accordingly, the defendant should be precluded from in any way mentioning potential penalties.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

*/s/ Reginald L. Harris*
REGINALD L. HARRIS, #48939MO
JENNIFER A. WINFIELD, #53350MO
Assistant United States Attorneys
111 S. 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200

CERTIFICATE OF SERVICE

I hereby certify that on **January 18, 2016**, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

*/s/ Reginald L. Harris*
REGINALD L. HARRIS, #48939MO
Assistant United States Attorney